

JSK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

      -v-

EDMUND BOYLE,
LETTERIO DECARLO, and
THOMAS DONO,

           Defendants.

- - - - - - - - - - - - - - - - - -x

              CALLY FILED

      SEALED INDICTMENT

      08 Cr.    6/11/08

## 08 CRIM 523

Judge McMahon

### COUNT ONE

The Grand Jury charges:

### THE ENTERPRISE

1.    At all times relevant to this Indictment, EDMUND
BOYLE, LETTERIO DECARLO, and THOMAS DONO, the defendants, were
associates of the Gambino Organized Crime Family of La Cosa
Nostra (the "Gambino Organized Crime Family").  The Gambino
Organized Crime Family is a criminal organization whose members
and associates have engaged in numerous criminal acts, including
murder; attempted murder; robbery and burglary; extortion; labor
racketeering; financing, making, and collecting extortionate
extensions of credit (commonly known as "loansharking");
operating illegal gambling businesses; money laundering; witness
tampering; and obstruction of justice.

2.    The Gambino Organized Crime Family, including its
leadership, membership, and associates, constituted an
"enterprise," as that term is defined in Title 18, United States

Code, Section 1959(b)(2) – that is, a group of individuals associated in fact, which was engaged in, and the activities of which affected, interstate and foreign commerce.  The Gambino Organized Crime Family was an organized criminal group based in New York City that operated in the Southern District of New York and elsewhere and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.    The Gambino Organized Crime Family was part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra" ("LCN"), which operated through entities known as "Families."  In addition to the Gambino Organized Crime Family, five other Families operated in the New York City and New Jersey area, namely, the Genovese Organized Crime Family of LCN, the Luchese Organized Crime Family of LCN, the Colombo Organized Crime Family of LCN, the Bonanno Organized Crime Family of LCN, and the Decavalcante Organized Crime Family of LCN.

4.    The Gambino Organized Crime Family operated through groups of individuals known as "crews" and "regimes," most of which were based in New York City.  Each "crew" had as its leader a person known as a "Caporegime," "Capo," or "Captain," and consisted of "made" members, sometimes known as "Soldiers," "wiseguys," "friends of ours," and "good fellows."

2

Soldiers were aided in their criminal endeavors by other trusted individuals, known as "Associates," who sometimes were referred to as "connected" or identified as "with" or "around" or "under" a Soldier. Associates participated in the various activities of the crew and its members.

5.    Each Capo was responsible for supervising the criminal activities of his crew and provided Soldiers and Associates with support and protection. In return, the Capo typically received a share of the illegal earnings of each of his crew's Soldiers and Associates, which payments were sometimes referred to as "tribute."

6.    Above the Capos were the highest-ranking members of the Gambino Organized Crime Family. The head of the Gambino Organized Crime Family was known as the "Boss," who was normally assisted by an "Underboss" and a "Consigliere," or counselor. The Boss, Underboss, and Consigliere were responsible for, among other things, setting policy, resolving disputes among members of the Gambino Organized Crime Family, and resolving disputes between members of the Gambino Organized Crime Family and members of other criminal organizations. At various times relevant to this Indictment, members of the Gambino Organized Crime Family were temporarily appointed to serve as Boss, Underboss, Consigliere, or Capo in place of an incarcerated member holding that position. Whenever this occurred, the member holding the

temporary appointment would function in an "acting" capacity for the incarcerated member, who continued to hold the "official" position in the Family. In addition, at various times relevant to this Indictment, members of the Gambino Organized Crime Family served on a committee or ruling panel, a group of high-ranking members of the Family who assisted and, at times, made decisions with or on behalf of the Boss and the Acting Boss of the Family.

7. The Boss, Underboss, and Consigliere, and, at times, members of the ruling panel of the Gambino Organized Crime Family supervised, supported, protected, and disciplined the Capos, Soldiers, and Associates, and regularly received reports regarding their various activities. In return for their supervision and protection, the Boss, Underboss, Consigliere, and members of the ruling panel typically received part of the illegal earnings of each crew.

THE DEFENDANTS

8. At all times relevant to this Indictment, EDMUND BOYLE, LETTERIO DECARLO and THOMAS DONO, the defendants, were Associates of the Gambino Organized Crime Family who were "with" or "around" Gambino Organized Crime Family Soldier Thomas Carbonaro, a/k/a "Huck." BOYLE, DECARLO and DONO, as Associates of the Gambino Organized Crime Family, committed various crimes, including, among other things, murder, assault, robbery, burglary, witness tampering, and obstruction of justice. In

4

approximately 2001, DONO was proposed for induction as a "made" member or Soldier in the Gambino Organized Crime Family as a reward for crime committed on behalf of the Family, including the murder of Frank Hydell charged in this Indictment.

PURPOSES OF THE ENTERPRISE

9.    The purposes of the enterprise included the following:

a.    Enriching the leaders, members, and associates of the enterprise through criminal activities;

b.    Preserving and augmenting the power, territory, and financial profits of the enterprise through murder, intimidation, violence, and threats of physical and economic harm; and

c.    Keeping victims and citizens in fear of the enterprise and its leaders, members and associates by: (i) identifying the enterprise, its members and associates, with La Cosa Nostra or the "Mafia"; (ii) causing and threatening to cause economic harm; and (iii) committing and threatening to commit physical violence.

d.    Protecting the members and associates of the enterprise from detection and prosecution by law enforcement, by intimidating and seeking reprisal against other members and associates who provided testimony or other information to law enforcement personnel.

<u>MEANS AND METHODS OF THE ENTERPRISE</u>

10.   Among the means and methods by which the defendants and other enterprise members and associates conducted and participated in the conduct of the affairs of the enterprise were the following:

a.   To protect and expand the enterprise's business and criminal operations, members and associates of the enterprise murdered and threatened to murder persons who engaged in activity that threatened (i) the power and criminal activities of the enterprise and the power and criminal activities of fellow LCN Families, (ii) the power of leaders of the enterprise, and (iii) the flow of criminal proceeds to the leaders of the enterprise.

b.   Members and associates of the enterprise promoted a climate of fear in the community through threats of economic harm and violence.

c.   Members and associates of the enterprise generated income for the enterprise through various criminal activities, including murder; attempted murder; robbery and burglary; extortion; labor racketeering; loansharking; operating illegal gambling businesses; money laundering; witness tampering; and obstruction of justice.

d.   Members and associates of the enterprise at times engaged in criminal conduct or coordinated their criminal

activities with leaders, members, and associates of other LCN Families.

       e.   To avoid law enforcement scrutiny of the enterprise's criminal activities, members, and associates of the enterprise conducted meetings surreptitiously, typically using coded language to make arrangements for meetings, meeting at rest stops along highways and at diners, and engaging in "walk and talks."

       f.   To avoid law enforcement scrutiny of the enterprise's criminal activities, members and associates of the enterprise attempted to identify and did identify individuals suspected of providing, or deemed likely to provide, information to law enforcement about the enterprise, its members and activities, and about other LCN Families.

<u>VIOLENT CRIME IN AID OF RACKETEERING</u>

       11.  At all times relevant to this Indictment, the Gambino Organized Crime Family, as more fully described in Paragraphs 1 through 10 of this Indictment, which are repeated, realleged, and incorporated by reference as though set forth fully herein, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, although not a legal entity, which was engaged in, and the activities of which affected, interstate and foreign commerce.

12.  At all times relevant to this Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of New York State Penal Law; acts indictable under Title 18, United States Code, Section 1111 (involving murder); acts indictable under Title 18, United States Code, Sections 892, 893 and 894 (involving the making, financing, and collecting of extortionate extensions of credit); acts indictable under Title 29, United States Code, Section 186 (involving receipt of prohibited labor payments); acts indictable under Title 18, United States Code, Section 1955 (involving operation of an illegal gambling business); acts indictable under Title 18, United States Code, Section 1951 (involving extortion and robbery); acts indictable under Title 18, United States Code, Section 1341 (involving mail fraud); acts indictable under Title 18, United States Code, Section 1343 (involving wire fraud); acts indictable under Title 18, United States Code, Section 1956 (involving money laundering); and acts indictable under Title 18, United States Code, Section 1512 (involving obstruction of justice and witness tampering).

13.  On or about April 28, 1998, in the Southern District of New York and elsewhere, as consideration for the receipt of, and as consideration for a promise and an agreement

8

to pay, anything of pecuniary value from the Gambino Organized Crime Family, an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing their positions in the Gambino Organized Crime Family, EDMUND BOYLE, LETTERIO DECARLO, and THOMAS DONO, the defendants, unlawfully, intentionally and knowingly murdered and aided and abetted the murder of Frank Hydell, in violation of New York State Penal Law, Sections 125.25 and 20.00.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

## COUNT TWO

The Grand Jury further charges:

14.  On or about April 28, 1998, in the Southern District of New York and the Eastern District of New York, EDMUND BOYLE, LETTERIO DECARLO, and THOMAS DONO, the defendants, with malice aforethought, willfully, deliberately, maliciously and with premeditation killed and aided and abetted the killing of Frank Hydell to prevent his communicating to a law enforcement officer and judge of the United States information relating to the commission and possible commission of federal offenses, including, among other crimes committed by members and associates

9

of the Gambino Organized Crime Family, the beating and murder of Frank Parasole in or about January 1997.

(Title 18, United States Code,
Sections 1512(a)(1)(C), 1512(a)(3)(A), and 2.)


_____
FOREPERSON

_____
MICHAEL J. GARCIA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

### UNITED STATES OF AMERICA

### - v. -

### EDMUND BOYLE, LETTERIO DECARLO, and THOMAS DONO, Defendants.

---

## INDICTMENT

08 Cr.

(Title 18, United States Code, Sections 1959(a)(1) and 2 and Title 18, United States Code, Sections 1512(a)(1), 1512 (a)(3)(A), and 2).

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

Foreperson.

*Sherry Picchione*

Sealed Indictment Filed. 3 A/w issued.

Fox, M.J.

11